IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| LEWIS DUCKETT, | ) | C/A No. 4:07-300-JFA-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| COLLIE RUSHTON, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, Lewis Duckett, ("petitioner/Duckett"), is an inmate in the custody of the South Carolina Department of Corrections (SCDC). Petitioner, appearing *pro se*, filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on January 31, 2007. Respondents filed a motion for summary judgment on April 20, 2007, along with a return and memorandum of law in support of the motion. The undersigned issued an order filed April 23, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. Petitioner filed a response in opposition to respondents' motion for summary judgment on May 21, 2007.

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

# I. PROCEDURAL HISTORY

The procedural history as set out by the respondent has not been seriously disputed by the petitioner. Therefore, the undisputed procedural history as stated by the respondent is set forth herein.

Petitioner was indicted at the January 2003 term by the Greenville County Grand Jury for the crime of murder (03-GS-23-0057). {PCR App. 97-98}. Petitioner was represented at the trial level by Scott Robinson, Esquire. On August 12, 2003, Petitioner pled guilty before the Honorable Howard P. King. The State allowed petitioner to plead guilty to the lesser included offense of voluntary manslaughter in return for his plea. **{PCR App. 10}**. Judge King sentenced petitioner to twenty (20) years imprisonment. **{PCR App. 36, 100}**.

It appears there was no direct appeal from this conviction and sentence. Petitioner next filed an Application for Post-Conviction Relief ("APCR") on May 13, 2004 (2004- CP-23-3148). In the APCR, petitioner raised the following grounds for relief:

> Was the Applicant denied his fundamental right to effective assistance of Counsel, due to Counsel lack of investigation pertaining to the indictment that was brought against, applicant, thus which caused counsel for Applicant to fail to argue a forth amendment claim, lack of jurisdiction; and due process of law where indictment was not properly processed by law?

**{PCR App. 38}**. The State filed a Return dated August 4, 2004. **{PCR App. 51}**.

An evidentiary hearing in petitioner's APCR was held on December 13, 2004, before the Honorable John C. Few. Petitioner was present and represented by appointed counsel Maurice McNab. Petitioner called himself to testify; the State called trial counsel. **{PCR App. 55}**. Judge Few

2

orally denied relief at the hearing, and on January 10, 2005, filed an Order of Dismissal in which he rejected Petitioner's claims. **{PCR App. 89}**.

A timely notice of appeal was filed with the South Carolina Supreme Court from Judge Few's Order of Dismissal. Robert Pachak of the South Carolina Office of Appellate Defense was appointed to represent petitioner in his PCR appeal. On July 20, 2005, Pachak filed a "no merit" *Johnson* Petition for Writ of Certiorari and Petition to be Relieved as Counsel, in which he raised the following issue on behalf of petitioner:

> Whether petitioner's guilty plea complied with the mandates set forth in Boykin v. Alabama?

The State filed a letter Return to the *Johnson* Petition on July 22, 2005. Petitioner filed a pro se Response dated August 24, 2005, in which he raised the following issues:

> Did the trial court lacked (sic) subject matter jurisdiction to accept defendant's guilty plea and impose sentence by way of defective indictment?

By Order dated September 28, 2006, the South Carolina Supreme Court transferred the case to the South Carolina Court of Appeals. The state court of appeals issued an order on September 28, 2006, in which it denied the *Johnson* petition and granted the motion to be relieved. The Remittitur was sent down on October 30, 2006.

## II. PETITIONER'S GROUNDS FOR RELIEF

In his pro se Petition for Writ of Habeas Corpus, petitioner raises the following grounds for relief, quoted verbatim:

> Ground One:     Ineffective assistance of counsel.

3

> In the instant case, defense counsel failed to investigate and/or call available witnesses who would have verified the crime area had been tampered with also that others were seen leaving the crime area. The transcripts of both the plea and Post-conviction relief hearings, without a doubt, shows that petitioner's plea was not met under the mandates set forth in Boykin v. Alabama. . .

(Petition).

### III.  SUMMARY JUDGMENT

On April 20, 2007, the respondent filed a return and memorandum of law in support of their motion for summary judgment. Petitioner responded to the motion for summary judgment.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

4

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner has failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

## IV.  STANDARD OF REVIEW

Since Duckett filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  Lindh v. Murphy, 117 S. Ct. 2059 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir. 1998); Green v. French, 143 F.3d 865 (4th Cir. 1998).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To a large extent, the amendment of § 2254 shifts the focus of habeas review to the state court application of Supreme Court law.  See O'Brien v. DuBois, 145 F.3d 16 (1st  Cir. 1998) ("the

5

AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas proceeding by specifically directing the habeas court to make the state court decision the cynosure of federal review."). Further, the facts determined by the state court to which this standard is applied are presumed to be correct unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The United States Supreme Court has addressed procedure under § 2254(d). See <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S.Ct. 1495 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1). Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." <u>Id</u>. at 1521.

## V. MERITS

### A. GROUND ONE

As set out above, in Ground One petitioner raises the following claim:

> Ground One: Ineffective assistance of counsel.
> In the instant case, defense counsel failed to investigate and/or call available witnesses who would have verified the crime area had been tampered with also that others were seen leaving the crime area. The transcripts of both the plea and Post-conviction relief hearings, without a doubt, shows that petitioner's plea was not met under the mandates set forth in <u>Boykin v. Alabama</u> . . .

(Petition).

Thus, petitioner argues counsel failed to investigate and call witnesses and that his plea did not meet the mandates set forth in <u>Boykin</u>.

In the memorandum in support of the motion for summary judgment, respondent argues that petitioner has not met his burden of proof to show that the state court decision was either an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts in light of the evidence present at the state court hearing. Further, respondent asserts that the record reflects the trial judge explained to petitioner the maximum possible sentences, and clearly explained the fact that petitioner was giving up his right to a jury trial as well as the accompanying constitutional rights.

First, petitioner argues he was denied effective assistance of counsel for failure to investigate and/or call available witnesses who would have verified that the crime area had been tampered with and also that others were seen leaving the crime area.

When presented with an application for habeas relief, the first inquiry by the court is to determine whether the claim raised in the petition was "adjudicated on the merits" by the state court. 28 U.S.C.A. §2254(d). This claim was adjudicated on the merits; therefore, the deferential standard of review set forth in §2254(d) applies and federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. § 2254(d)(1),(2); See Williams v. Taylor, 529 U.S. at 398.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States

7

Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.[2]

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) (quoting Strickland, reversed on other grounds, 476 U.S. 28 (1986)). In order to meet the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland's prejudice prong requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Strickland, at 694.

---

[2] Hill states:

> Although our decision in Strickland v. Washington dealt with a claim of ineffective assistance of counsel in a capital sentencing proceeding, and was premised in part on the similarity between such a proceeding and the usual criminal trial, the same two-part standard seems to us applicable to ineffective-assistance claims arising out of the plea process. Certainly our justifications for imposing the "prejudice" requirement in Strickland v. Washington are also relevant in the context of guilty pleas.

Hill, 474 U.S. at 56.

In <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993), the Supreme Court clarified its definition of prejudice quoted above, stating that "an analysis focusing solely on mere outcome determination . . . is defective." Instead, an appropriate analysis of prejudice should consider "whether the result of the proceeding was fundamentally unfair or unreliable." Therefore, a court analyzing the prejudice prong should not "set aside a conviction or sentence solely because the outcome would have been different but for counsel's error." See <u>Williams v. Taylor</u>, Nos. 98-14, 98-16, 1998 WL 883336 (4th Cir. Va. Dec. 18, 1998) (quoting <u>Lockhart</u>, at 369-70).

The court further held at page 695 that:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the <u>wide</u> <u>range</u> of professionally competent assistance. (Emphasis added.)

As set forth above, the first inquiry is whether or not trial counsel committed error. A review of the PCR transcript reveals that petitioner testified counsel failed to properly investigate his case and call witnesses that could have testified in his favor. However, petitioner offered no witnesses or evidence to support his allegation. Counsel testified that there were three different statements from petitioner and there were six shots in this case. Counsel testified that he could not change the facts of the case or the fact petitioner had given one statement saying he did not do it and another sating he did do it. Further, trial counsel testified that "I couldn't find any witness who could support our position that this individual attacked him. I could find nothing to support that. I wish I could change the facts but I could not." (Tr. 80).

9

A review of the Order of Dismissal from the PCR judge reveals the following with regard to this issue:

> This court finds the Applicant's testimony is not credible, while also finding plea counsel's testimony is credible. This Court finds the decision to enter the plea was voluntarily made by the Applicant. This Court notes the Applicant admitted the truth of the charges against him, told the plea judge he was satisfied with plea counsel. And stated he was not coerced in any way. This Court finds there is no evidence to support the Applicant's claim that plea counsel should have investigated other possible defendants or co-defendants. This Court notes the Applicant admitted he committed the crime. This Court finds there was no agreement in this case for the Applicant to plead to anything other than voluntary manslaughter.

(Tr. 93).

A plea of guilty is considered by the court to be a solemn judicial admission that the charges against the defendant are true. The defendant may not later argue that his plea was invalid except in extremely limited circumstances, Blackledge v. Allison, 431 U.S. 63 (1977). The statements made by a defendant at the time he pleads guilty are taken as conclusive unless he can clearly demonstrate why those statements were not true, Crawford v. United States, 519 F.2d 347, 350 (4th Cir. 1975).

A review of Hill, supra, by the undersigned reveals the court held that, quoted verbatim:

> Although our decision in Strickland v. Washington dealt with a claim of ineffective assistance of counsel in a capital sentencing proceeding, and was premised in part on the similarity between such a proceeding and the usual criminal trial, the same two-part standard seems to us applicable to ineffective-assistance claims arising out of the plea process. Certainly our justifications for imposing the "prejudice" requirement in Strickland v. Washington are also relevant in the context of guilty pleas.

Hill, 474 U.S. at 56.

In the present case, a thorough review of the record by the undersigned results in the recommendation that respondent's motion for summary judgment be granted. Specifically, when petitioner's claim for habeas corpus relief is liberally construed, the petitioner does not give any supporting facts to substantiate his claims of ineffective assistance of counsel. There is nothing in the record to indicate counsel for the petitioner was ineffective. Counsel testified that he could not find any witnesses, petitioner had made three statements to the police, and there were six shots fired. Further, petitioner did not offer any testimony from any alleged witness, thus he has failed to show any prejudice.

The record supports the PCR judge's finding that the petitioner has not demonstrated that his attorney's performance was deficient by showing that his representation fell below an objective standard of reasonableness and, further, he has not shown that the attorney's performance actually prejudiced him. As the PCR court's rejection of the ineffective assistance of counsel ground for relief did not result in an unreasonable application of Strickland and was not based upon an unreasonable determination of facts in light of the state court record, this ground is without merit. No genuine issue of material fact has been shown in regard to this issue. Strickland, supra.

In conclusion, the undersigned finds that there was no constitutional violation denying effective assistance of counsel for failing to investigate the case and present witnesses. The undersigned finds that counsel met the reasonableness test of Strickland, supra. Certainly, petitioner has failed, assuming *arguendo* there was error, to show the result was fundamentally unfair or unreliable.

As to petitioner's allegation that his plea failed to satisfy the requirements of <u>Boykin v. Alabama</u>, 395 U.S. 238 (1969), this argument fails.[3] In accepting a guilty plea, the court must determine whether it represents an informed intelligent decision by the defendant, <u>Boykin v. Alabama</u>, <u>Id.</u>, after he understands all of the constitutional protections to which he is entitled, as well as the charges against him, <u>Henderson v. Morgan</u>, 426 U.S. 637, 645, n.13 (1976). At the plea hearing, the defendant must also be advised of the immediate results of his plea, including the maximum sentence he may receive and any mandatory minimum sentence, <u>Manley v. United States</u>, 588 F.2d 79 (4th Cir. 1978).

The undersigned reviewed the transcript and concludes that the trial judge complied with <u>Boykin</u>, <u>supra</u>. It is clear from the trial transcript that the trial judge carefully questioned the petitioner as to his understanding of the plea and to his right to a jury trial. As well, the trial judge communicated with the trial counsel on these issues. A review of the plea transcript reveals the following questions by the trial judge and petitioner's responses:

Q:   Do you understand the charge of the indictment?

A:   Yes, Sir.

Q:   The State has indicated a willingness to accept a plea to voluntary manslaughter, and do you understand that for this offense of voluntary manslaughter, that you could receive up to thirty (30) years in prison?

A:   Yes, Sir.

Q:   Do you also understand that there's a minimum sentence of two years?

---

[3] In his response in opposition, petitioner argues that "the mandates of Boykin v. Alabama was not met because had counsel investigated the case by interviewing pretrial witnesses, Petitioner would not have pled guilty, and would have insisted on going to trial." (Document #11).

A:    Yes, Sir.

Q:    And do you also understand that this is a no-parole offense, which means that you will have to serve 85 percent of whatever sentence I impose upon you before you would be released to any kind of community supervision; do you understand that?

A:    Yes, sir.
(Tr. 7-9).

The trial judge went on to ask petitioner if he understood that he had the right to a jury trial and by pleading guilty he was giving up the right to a jury trial, to confront witnesses and to cross-examine any witnesses. Petitioner responded that he understood. The court asked him if he understood that by pleading guilty he was waiving or giving up those Constitutional rights. Petitioner responded "yes sir." (Tr. 9-10). The trial judge asked petitioner the following:

Q:    Understanding, then the nature of the charges against you, and the consequences of a guilty plea; how do you wish to plead to this charge of voluntary manslaughter, guilty or not guilty?

A:    Guilty.

Q:    Do you understand that when you plead guilty, you're admitting the truth of the charges against you?

A:    Yes, sir.

Q:    You may have defenses to these charges; I don't know whether you do or not, but do you understand that, when you plead guilty, you waive or give up any defenses that you might have to these charges?

A:    Yes, sir.

. . .

Q:    Other than the fact that the State is willing to reduce the charges from murder to voluntary manslaughter, has anyone promised you anything or held out any hope of reward to get you to plead guilty?

A:    No, sir.

(Tr. 9-10).

Petitioner went on to respond that no-one had threatened him, used force to get him to plead guilty, pressured or intimidated him, he had had plenty of time to make up his mind, and that he was pleading guilty of his own free will and accord. Petitioner also testified that he was satisfied with the service of his attorney, he had talked to him as often and as long as he felt necessary for him to properly represent petitioner, that he did not need anymore time to talk with his attorney and that he felt his attorney had done everything he felt could have or should have been done on his behalf. Petitioner stated that he was completely satisfied with his attorney's services. Petitioner also testified that he had no complaints with his attorney, the solicitor, or any police officer and that he had understood all the questions and answered them truthfully. (Tr. 9-12).

The court asked petitioner as follows:

Q:   Voluntary manslaughter is generally considered to be in the heat of the passion or some kind of reason like that is the reason the killing took place. So, the original charge was one for murder, but the State is willing to–to reduce it to voluntary manslaughter. Do you understand?

A:   Yes, sir.

(Tr. 12-13).

A review of the PCR transcript and the Order of Dismissal reveals petitioner testified that he told his plea counsel that he wanted to plead guilty to involuntary manslaughter and he never intended to plead guilty to voluntary manslaughter. Petitioner testified that he believed he was pleading guilty to a lesser charge in exchange for pleading guilty to unrelated drug charges. Petitioner testified that he had been informed that he could plead guilty to involuntary manslaughter and

14

receive a seven-year sentence. However, petitioner also testified that trial counsel told him that he needed to get involuntary out of his mind "because it ain't going to happen." (Tr. 95).

Trial counsel testified that he explained and reviewed the pending charge, discovery materials, the facts of the case, the elements of murder and voluntary manslaughter with petitioner. Counsel testified that the solicitor at one point erroneously offered a seven-year plea agreement which was relayed to petitioner. However, trial counsel testified that he explained to petitioner that this was an error because the solicitor was referring to a different client. Counsel testified that he informed petitioner it was an error but informed him that the solicitor agreed to reduce the charge to voluntary manslaughter and, at one point, offered a fifteen-year sentence. Counsel testified the petitioner turned down this offer and the eventual agreement was to plead to the lesser offense with no sentence recommendation.

The PCR court found counsel's testimony that the applicant knew he was pleading guilty to voluntary manslaughter credible. The PCR judge noted that trial counsel testified that he did not believe the offense of involuntary manslaughter was applicable in this case. (Order of Dismissal 91-93).

The PCR judge concluded as follows:

> This Court finds the Applicant's testimony is not credible, while also finding plea counsel's testimony is credible. This Court finds the decision to enter the plea was voluntarily made by the Applicant. This Court notes the Applicant admitted the truth of the charges against him, told the plea judge he was satisfied with plea counsel, and stated he was not coerced in any way. This Court finds there is no evidence to support the Applicant's claim that plea counsel should have investigated other possible defendant or co-defendants. This Court notes the Applicant admitted he committed the crime. This Court finds there was no agreement in this case for the Applicant to plead to anything other than voluntary manslaughter. This Court also finds

15

> there was no agreement or recommendation as to the length of the sentence. This Court finds that, while the Applicant stated he wanted to plead guilty to involuntary manslaughter, plea counsel informed him that was not an option in this case.

(Tr. 93).

Thus, the transcript reveals that trial counsel discussed with and explained to petitioner the ramifications of his guilty plea, and that petitioner understood. As set out above, the trial court questioned the petitioner thoroughly about his guilty plea and the possible minimum and maximum sentences. Additionally, the trial court carefully questioned the petitioner as to his understanding of his guilty plea and his right to a jury trial.  It is apparent from the trial transcript that the petitioner clearly communicated with the trial judge and clearly understood the charge to which he was pleading guilty.

In conclusion, the undersigned finds that there was no constitutional violation  and that the plea was voluntarily made. The record supports the PCR judge's finding that the petitioner has not demonstrated that his attorney's performance was deficient by showing that his representation fell below an objective standard of reasonableness and, further, he has not shown that the attorney's performance actually prejudiced him. As the PCR court's rejection of the ineffective assistance of counsel ground for relief did not result in an unreasonable application of <u>Strickland</u> and was not based upon an unreasonable determination of facts in light of the state court record, petitioner's claims are without merit. No genuine issue of material fact has been shown.  Therefore, based on the above, the undersigned recommends that the respondent's motion for summary judgment be granted on this ground.

## VI.  CONCLUSION

Based on the reasons set out above, it is RECOMMENDED that respondent's motion for summary judgment (document #8 ) be GRANTED.

                Respectfully Submitted,

                s/Thomas E. Rogers, III
                Thomas E. Rogers, III
                United States Magistrate Judge

November 26, 2007
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**